**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Theodore R. Harmon,            Case No. 3:12CR187
                                                   Case No. 3:15CV1502
       Defendant-Petitioner,

           v.                                                **ORDER**

United States of America,

       Plaintiff-Respondent.

       This is a federal prisoner's collateral attack under 28 U.S.C. § 2255.

       In 2013, a jury convicted petitioner Theodore R. Harmon of using a facility or means of interstate commerce to attempt to knowingly persuade, induce, and entice an individual, who he believed to be fourteen years old, to engage in sexual activity under circumstances that would constitute a criminal offense under Ohio law, thereby violating 18 U.S.C. § 2422(b). I sentenced him to 168 months imprisonment, followed by a life term of supervised release.

       On appeal, the Sixth Circuit affirmed. *U.S. v. Harmon*, 593 F. App'x. 455 (6th Cir. 2014), *cert. denied,* 135 S. Ct. 1579 (2015).

       Harmon now moves to vacate, correct, or set aside his sentence under § 2255, raising claims of ineffective assistance of counsel.

       For the following reasons, I deny the motion.

**Background**

       The Sixth Circuit's decision in *Harmon*, *supra*, lays out the facts underlying Harmon's conviction in detail, so I only briefly summarize that information here.

The Department of Homeland Security (DHS) began investigating Harmon in March 2012 after he posted a classified internet ad on the website "motherless.com" seeking a "Daddy 4 Daughter or young sub/sluts" sexual encounter. (R. 64: Trial Transcript, Vol. 1, PageID 623-24).

Task Force Agent (TFA) Michael Spadafora, an undercover agent with the Brevard County, Florida, Sheriff's Department, working with a child exploitation task force for DHS, responded to the ad, posing as the father of a fourteen year-old girl. The agent, using the Yahoo internet name Gatorfan.33, said he would be travelling to Ohio in the near future with his daughter and asked if Harmon wanted to meet them. Harmon responded and began communicating with the agent over the next week.

In his communications, Harmon discussed the various sex acts he wanted to perform with the girl. Harmon also described his past sexual experience with minor girls. TFA Spadafora asked if he had ever done something like what they discussing before. Harmon responded that he had, and described how he had "trained" a thirteen year-old girl for over a year to be his sexual plaything. He also mentioned "training" other young girls to engage in sex acts and "training" them to persuade their friends to have sex with him.

Harmon eventually arranged a meeting for March 14, 2012 with TFA Spadafora at the Knights Inn motel in Rossford, Ohio. DHS agents from Florida, Cleveland, and Detroit met at the Rossford Police Department to coordinate surveillance around the motel.

Shortly before the meeting, TFA Spadafora made a recorded phone call with Harmon. During the call, Harmon spoke with a female undercover officer portraying the fourteen year-old girl. TFA Spadafora, portraying the father, cut that conversation short after Harmon attempted to

engage the girl in a discussion of what she "enjoyed," which the agent understood to be the beginning of a discussion about what sex acts Harmon would perform with the girl.

Harmon arrived at the motel and was arrested. A search of the trunk of his vehicle revealed an eighteen-pack of beer and a black overnight bag containing condoms, sex toys, a blindfold/sleeping mask, ropes, and knotted sheet strips. Agents also seized Harmon's cell phone, which contained call logs and text messages relating to the meeting with TFA Spadafora. Under questioning, Harmon gave a recorded confession.

In April 2012, a grand jury returned an indictment charging Harmon with using a facility or means of interstate commerce to attempt to knowingly persuade, induce, and entice an individual, who he believed to be fourteen years old, to engage in sexual activity under circumstances which would constitute a criminal offense under Ohio law, thereby violating 18 U.S.C. § 2422(b).

Harmon pleaded not guilty and moved to suppress statements he made to officers when arrested. I held an evidentiary hearing and denied the motion.

Harmon then filed a motion to dismiss the indictment, contending that although he spoke with an undercover agent posing as the father of a fourteen year-old girl, he spoke only once to a female agent posing as the minor, and nothing in that brief conversation could constitute enticement or persuasion. I ruled that the government need not prove that the person hearing the enticement was, in fact, a minor, but need only prove an attempt on Harmon's part to entice a minor. I denied the motion, holding that whether the government could meet its burden of proof was not a matter fit for a motion to dismiss.

Harmon filed a motion in limine asking that I exclude any reference to a prior criminal record. He also asked that I exclude the contents of the bag agents seized at the time of his arrest.

The government responded that it had no intention of introducing evidence referring to Harmon's criminal record. It did, however, intend to introduce into evidence the contents of the black bag seized from Harmon's car at the time of his arrest because it contained items of a sexual nature. The government explained that Harmon's state of mind was a critical element of the charge, and that state of mind is often proven indirectly through circumstantial evidence. I denied the motion in limine without prejudice.

In May 2013, a jury found Harmon guilty of the sole count charged. The presentence report (PSR) noted that the mandatory minimum term for a conviction under 18 U.S.C. § 2422(b) is ten years, up to life imprisonment, followed by supervised release of five years, up to a life term. The PSR calculated Harmon's Total Offense Level at thirty and his Criminal History Category at IV, corresponding to a guideline range of 135 to 168 months imprisonment.

In November 2013, I sentenced Harmon to 168 months imprisonment, followed by a life term of supervised release. In July 2015, Harmon timely filed the instant § 2255 motion to vacate, correct, or set aside his sentence, raising claims of ineffective assistance of counsel.

**Standard of Review**

To prevail on a motion to vacate under § 2255, the petitioner "must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. U.S.*, 398 F.3d 855, 858 (6th Cir. 2005). If the petitioner alleges a non-constitutional error, he must establish the error amounts to a "fundamental defect which inherently results in a complete miscarriage of justice" or "a violation of due process." *Watson v. U.S.*, 165 F.3d 486, 488 (6th Cir. 1999) (internal quotation marks omitted).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Accordingly, claims petitioner could have raised on direct appeal, but did not, are not suited to a § 2255 motion unless the petitioner shows: 1) cause and actual prejudice to excuse his failure to raise the claims previously; or 2) that he is "actually innocent" of the crime. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

To make out an ineffective assistance of counsel claim, the petitioner must demonstrate both inadequate performance by counsel and prejudice resulting from that inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686.

To show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The focus is on the adequacy of counsel's actual performance, not hindsight potential for improvement. *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998).

**Discussion**

Harmon contends:

> 1) Counsel was ineffective for failing to present a Fifth Amendment due process challenge to have the indictment dismissed on the grounds of outrageous government conduct;
>
> 2) Counsel was ineffective for failing to submit an "entrapment" jury instruction;
>
> 3) The statute of conviction, 18 U.S.C. § 2422(b), violates due process and is void for vagueness, or in the alternative is

>unconstitutional as applied to him, therefore counsel was ineffective for failing to file a motion to dismiss;
>
>4) Counsel was ineffective for failing to file a motion to suppress intercepted communications under 18 U.S.C. § 2518 because they were not recorded in accordance with the Act's requirements; and
>
>5) Trial and appellate counsel were ineffective for the theory which they presented for the suppression of evidence relating to the contents of the black bag, in violation of the Sixth Amendment and Federal Rule of Evidence 404, et seq.

(R. 73: § 2255 Mem. in Support).

I address each argument in turn.

### 1. Fifth Amendment Due Process

Harmon contends that counsel was ineffective for failing to present a Fifth Amendment Due Process challenge to dismiss the indictment on the grounds of "outrageous government conduct." He claims that TFA Spadafora – whose response to Harmon's internet advertisement said that he had a fourteen year-old daughter, they had a special relationship, they would be in the area, that he read Harmon's ad, but he was not sure if Harmon was into young girls or just role playing – was "so enmeshed in criminal activity that the prosecution of the defendant shall be repugnant to the American criminal justice system." (*Id.*, PageID 915).

The circuits are split regarding whether an "outrageous government conduct" defense is viable.[1] The Sixth Circuit, however, has soundly rejected the defense, looking instead to the doctrine

---

[1] The "outrageous government conduct" defense has its roots in *United States v. Russell*, 411 U.S. 423, 431-32 (1973), in which then-Justice Rehnquist suggested in dicta that government involvement may, under certain circumstances, be so outrageous as to violate due process and bar criminal prosecution. Not long after, however, Justice Rehnquist backed away from that position, stating in one opinion "[t]he remedy of the criminal defendant with respect to acts of Government agents, which, far from being resisted, are encouraged by him, lies solely in the [traditional] defense of entrapment," not in due-process principles. *Hampton v. United States*, 425 U.S. 484, 489 (1976).

of entrapment to assess a defense that sounds in inducement, *see United States* v. Tucker, 28 F.3d 1420, 1428 (6th Cir.1994) (finding that there is no binding Supreme Court or Sixth Circuit authority for the defense because it has only been recognized in dicta), or on a theory that the "undercover officer's involvement in creating [the] crime was so significant that criminal prosecution violates due process." *United States v. Warwick*, 167 F.3d 965, 975 (6th Cir. 1999); *see United States v. Al-Cholan*, 610 F.3d 945, 952 (6th Cir. 2010) ("[W]e have never applied the 'outrageous government conduct' defense, and have stated that 'there are . . . strong reasons for concluding that such a defense simply does not exist.'").

Given that the "outrageous government conduct" defense is not available in the Sixth Circuit, Harmon can hardly fault counsel for not raising it at trial. *See United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Accordingly, I deny Harmon's first ineffective assistance claim.

### 2. Entrapment Instructions

In his second claim, Harmon states that counsel was ineffective for failing to submit an entrapment jury instruction, and, as a result, failed to present evidence in support of a downward departure during sentencing on the basis of manipulation/entrapment.

As an initial matter, defense counsel did not use entrapment as a defense. Indeed, he specifically declined to raise it as a defense:

> I think he was trapped, *and I'm not using a legal defense here*, but I think that he was trapped in a sting, and the Court will read to you the instructions and will show you that the government can do this; they can pose as a father, and there doesn't even have to be a minor, but for – my position is that the trap was sprung immediately causing Mr.

7

> Harmon no reason to persuade or entice. So I think they were too quick in springing the trap to get that going.

(R. 65: Trial Tr., Vol. 2, PageID 815-16) (emphasis added).

It would have been pointless to raise an entrapment defense because Harmon cannot establish the criteria. A valid entrapment defense requires proof of two elements: 1) government inducement of the crime; and 2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *United States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

"Predisposition" means the defendant's state of mind before coming into contact with government agents. *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984). "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *Russell*, 411 U.S. at 436. The fact that officers or employees of the government afford opportunities or facilities for the commission of the offense will not defeat a prosecution. *Sherman v. United States*, 356 U.S. 369, 372 (1958).

Factors suggesting predisposition include:

> [t]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducements or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*Al-Cholan*, 610 F.3d at 950 (internal quotation marks omitted).

Had Harmon's counsel raised an entrapment defense, the government would have had little trouble having it overruled, as I would have had no hesitation in overruling any such motion. He clearly was predisposed to his crime. Harmon had two prior sex-offense convictions: 1) felony

pandering of sexually oriented matter involving a minor in 2004; and 2) misdemeanor criminal child enticement (by plea) in 2007. Defense counsel was wise not to raise an entrapment defense, as doing so would have opened the door for the government to tell the jury about Harmon's prior sex offenses. No doubt that would have prejudiced Harmon.

Accordingly, I deny Harmon's second ineffective assistance claim.

### 3. Due Process

In his third ground, Harmon contends that § 2422(b) violates due process and is void for vagueness as it applies to him, and that counsel was ineffective for failing to file a motion to dismiss the indictment on those grounds. He argues that the statute fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or is so vague and ambiguous that it encourages arbitrary and erratic arrests and convictions.

The statute states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).

Harmon contends that he cannot be convicted under the statute because he communicated over the internet with an adult intermediary, rather than directly with a minor. According to him, those actions fall outside the confines of the statute.

The government counters that communication with an adult intermediary, done for the purpose of attempting to persuade, induce, entice, or coerce a minor to engage in sexual activity, is

9

prohibited under § 2422(b). The government points to cases from district courts within the Sixth Circuit, as well as cases in other federal circuit courts, that have found communication with an adult intermediary to be outlawed under the statute. The government insists that, regardless of how Harmon attempts to sidestep it, § 2422(b) outlaws his conduct. I agree.

A criminal statute is unconstitutionally vague where it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010). Fair notice of what is prohibited in a criminal statute is not measured by a particular defendant's intelligence, but is measured by a person with ordinary intelligence. *United States v. Williams*, 553 U.S. 285, 304-306 (2008).

The Sixth Circuit has not considered whether § 2422(b) is unconstitutionally vague. The Third Circuit has, however, and ruled that it is not. *See United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006). The court concluded that although § 2422(b) does not define the terms "persuade," "induce," "entice" and "coerce," they "have a plain and ordinary meaning that does not need further technical explanation." *Id.* at 473. "[A]ny ambiguity in § 2422(b) is no greater than that found in many criminal statutes. These terms are sufficiently precise to give a person of ordinary intelligence fair notice as to what is permitted and what is prohibited and to prevent arbitrary and discriminatory enforcement." *Id.* I find the Third Circuit's reasoning persuasive.

Moreover, although the Sixth Circuit has not addressed whether § 2422(b) is unconstitutionally vague, it has squarely addressed whether someone can violate the statute by communicating with an adult intermediary rather than directly with a minor. In *United States v. Roman*, 795 F.3d 511, 515 (6th Cir. 2015), the defendant moved to dismiss the indictment on the

10

ground that he did not knowingly attempt to persuade, induce, or entice a minor child to engage in sexual activity because all of his communications were with an adult law enforcement agent playing the role of a "decoy parent" and not with the minor child.

As Harmon has argued, Roman pointed out that the object of each verb used in § 2422(b) – persuades, induces, entices, or coerces – is "any individual who has not attained the age of 18 years." *Id.* He denied attempting directly to persuade, induce, entice, or coerce a minor child. Roman contended that because the legislative history of the statute does not mention adult intermediaries, any ambiguity in the statute must be resolved in his favor. *Id.* at 516.

The Sixth Circuit disagreed with Roman's reading of "this *unambiguou*s statute." *Id.* (emphasis added). Explaining that the focus always remains on the defendant's subjective intent because the statute protects children from the act of solicitation itself, the court held that "the statute is violated even if the targeted minor is not a real person as long as the defendant demonstrates that he is, or is attempting to, persuade, induce, entice, or coerce the minor to engage in sexual activity." *Id.* (internal quotations and citations omitted). Thus, the court held that a defendant violates § 2422(b) by communicating only with an adult intermediary, if the defendant's communications with that intermediary are intended to persuade, induce, entice, or coerce the minor child's assent to engage in prohibited sexual activity. *Id*.

As far as I can tell, every circuit to consider this issue has come to the same conclusion. *See, e.g.*, *United States v. Lauyers*, 653 F.3d 27, 33 (D.C. Cir. 2011); *United States v. Spurlock*, 495 F.3d 1011 (8th Cir. 2007); *United States v. Galiardi*, 506 F.3d 140 (2d Cir. 2007); *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001). As the Eleventh Circuit has observed, "the efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an

11

intermediary to carry out his intended objective." *United States v. Murrell*, 368 F.3d 1283, 1287 (11th Cir. 2004).

The unanimity of the courts on this issue leaves me with no doubt that a "person with ordinary intelligence" would have understood what Harmon was doing was illegal. *See Williams*, 553 U.S. at 306. Harmon's assertion that *he* did not understand that fact – one which strains credibility given his criminal history – is inapposite. "[I]gnorance of the law does not generally excuse criminal conduct." *United States v. Beavers*, 206 F.3d 706, 709 (6th Cir. 2000); *see Cheek v. United States*, 498 U.S. 192, 199 ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.").

In light of the above, Harmon's counsel did not prejudice him by not moving to dismiss the indictment on due process grounds. Such a motion would have been pointless. *See Carter*, 355 F.3d at 924; *see also Coley*, 706 F.3d at 752. Accordingly, I deny Harmon's third ineffective assistance claim.

### 4. Intercepted Communications

In his fourth ground, Harmon argues his counsel was ineffective for failing to move to suppress his recorded communications with TFA Spadafora. He also contends TFA Spadafora did not preserve the communications in a way to protect the recordings from editing or other alterations. Harmon's arguments are meritless.

It is black-letter law that it is not unlawful for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication. 18 U.S.C. § 2511(2)(c); *see generally* JAMES G. CARR, PATRICIA A. BELLIA, & EVAN A. CREUTZ, *The Law of Electronic Surveillance,* §§ 3:53, 3:54 (Thomson Reuters 2015). One who engages in a

telephone conversation may not justifiably expect that the participant on the other end of the line will not record or disclose the substance of what is said. *See, e.g.*, *United States v. Santillo*, 507 F.2d 629 (3d Cir. 1975). Such expectations of privacy are not "justifiable" within the meaning of *Katz v. United States*, 389 U.S. 347 (1967), and therefore are not entitled to Fourth Amendment protection. *Santillo*, 507 F.2d at 632-33. Here, TFA Spadafora was a participant in the instant chats and telephone conversations with Harmon, and was therefore entitled to record and disclose them.

Harmon correctly observes that "[t]he recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations." 18 U.S.C. § 2518(8)(a). Relying on that rule, he complains that TFA Spadafora used the copy-and-paste method to record their instant messages and electronic communications into a Word document, a method that permitted him to edit and alter the communications. Harmon cites *United State v. Jackson*, 488 F. Supp. 2d 866 (D. Neb 2007), to argue that a court must exclude a copy-and-paste document for all purposes.

Harmon's reliance on *Jackson* is misplaced. That case is not a blanket rejection of all recordings of electronic communications that have been copied-and-pasted into a word processing document. Rather, that holding applies to documents that include "numerous examples of missing data, timing sequences that do not make sense, and editorial information." *Id.* at 871. Harmon has not demonstrated such errors occurred in this case. *See United States v. Lanzon*, 639 F.3d 1293, 1302-03 (11th Cir. 2011) (transcript of conversations admissible where no evidence existed that portions of conversations had been destroyed or altered).

In light of the above, Harmon has not shown error or prejudice sufficient to establish his counsel was ineffective for not filing a motion to suppress the transcripts of his conversations with TFA Spadafora. I therefore deny Harmon's fourth ineffective assistance claim.

### 5. The Black Bag

Finally, Harmon asserts that both trial and appellate counsel erred by not arguing to exclude the black bag containing sex toys and other items from evidence. He argues that the intent to persuade, for which he was charged, and the intent to perform the act of engaging in illegal sex, for which he was not charged, are separate crimes. He contends the black bag was irrelevant to the crime with which he was charged. Thus, he believes both trial and appellate counsel were ineffective for failing to provide their respective courts the "proper foundation which would have merited the suppression of the black bag full of sex toys," and as a result, "the jury was allowed to consider prejudicial evidence of a crime he was not charged with." (R. 73: § 2255 Memo, PageID 943).

Harmon misunderstands the government's burden of proof under § 2422(b), and why introduction of the bag's contents into evidence was necessary. In *Roman*, 795 F.3d at 517, the Sixth Circuit explained that "[t]o establish attempt [under § 2422( b)], the government must prove that the defendant had the intent to commit criminal solicitation of a minor . . . *and* that he took a substantial step towards committing that crime."(emphasis added); *see also United States v. Barlow*, 568 F.3d 215, 219 (5th Cir. 2009).

"A substantial step must be something more than mere preparation. . . . It must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000) (citation

14

omitted). The substantial step test has two elements: 1) the specific intent to commit the underlying crime, *mens rea*; and 2) conduct which constitutes a "substantial step" toward the commission of the crime, *actus reus*. *United States v. Barlow,* 568 F.3d 215, 219 (5th Cir. 2009).

The *Roman* court held that the defendant took substantial steps toward completing the § 2422(b) offense when he "purchased a flower and the child's favorite Butterfinger candy to help 'break the ice' and to obtain her assent to engage in sexual activity with him." *Roman*, 795 F.3d at 518. In *Murrell*, 368 F.3d at 1288, the court held that the defendant took a substantial step toward inducing a minor to engage in illicit sexual acts when he carried a teddy bear, $300 in cash, and a box of condoms when he arrived at the meeting site.

Here, there was a sufficient nexus between the contents of the black bag (condoms, sex toys, restraints, blindfold, lotion, and hair clips) and what the government had to prove – i.e., Harmon's state of mind in attempting to violate § 2422(b). Because the contents were directly related to what Harmon had in mind and what he anticipated doing by coming to the motel for the arranged meeting, they were part of the ongoing course of conduct underlying the crime with which Harmon was charged. The bag's contents demonstrated: 1) Harmon's specific intent to commit the underlying crime, *mens rea*; and 2) conduct which constituted a "substantial step" toward the commission of the crime, *actus reus*. *See Barlow*, 568 F.3d at 219. Thus, the contents were admissible under FRE 402.

Harmon's claim of ineffective assistance therefore fails in this instance as in all others. Harmon cannot blame his counsel for failing to take frivolous action. It is evident that failing to make a motion with no chance of success could not possibly prejudice the outcome. *See Carter*, 355

F.3d at 924; *see also Coley*, 706 F.3d at 752. I therefore deny Harmon's fourth ineffective assistance claim.

## Conclusion

In sum: Harmon dealt the hand his attorney had to play. He gave the government a fistful of trumps; his lawyer drew nothing to beat the prosecutor's hand. He cannot fairly fault his attorney, who played what Harmon had given him as well as any attorney could have, for the loss.

For the reasons stated above, it is hereby

ORDERED THAT petitioner Theodore R. Harmon's motion to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255 be, and the same hereby is, denied.

I decline to grant a certificate of appealability. In any event, Harmon could not take an appeal from this decision in good faith, and appeal should not be allowed without prepayment of the requisite filing fee.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge